Case 14-4088, Dino Rikos et al. v. P and G, Oral Argument, 15 minutes per side. Mr. Murray for the appellate. You may proceed. Good morning, Your Honors, and may I start by thanking you for your indulgence for the weather it'll hair yesterday. Appreciate it. Certainly. Your Honors, plaintiffs seek to certify a class consisting of all consumers of a line on the basis that a line does not provide any improvement in digestive health, as the product advertises it does. Yet plaintiffs refuse to have this court or the court below even consider, let alone rigorously analyze, the experience that those many a line consumers were satisfied with the product and purchased it over and over. The unique experiences of each a line consumer mean that plaintiffs' claims are atypical and that individualized issues predominate, making this case inappropriate for class treatment. I gather that their theory is that a line does not produce digestive health benefits to anyone. That's right, Your Honor. Why isn't that something that should and could be decided on a class-wide basis? Because our evidence shows that it doesn't quite work that way. It's not as simple as that. For example, in the Dukes case, they put in all sorts of record evidence saying this is a binary point, that either these people were discriminated against or they weren't. And the court said, no, it doesn't work that way. There are whole sorts of situations in between. And following Dukes, that's what courts have to do. But Dukes arguably is different in the sense that Dukes is involving individual employment determinations, promotion determinations, which could vary by store or could vary by employer. Whereas if the plaintiff's theory is correct, a line does no good for anyone. And the fact that there are benefits that some people think they're getting is all, according to their theory, the placebo effect. Now, again, there's no evidence on the placebo. That was counsel's argument. But our point is, it's two ends of a spectrum. There are those who claim they get wonderful benefits from a line, not placebo of any sort. There are, on the other end, people like the named plaintiffs here who say we get no effect at all. And then there's a whole jumble of people in the middle that get some effect. It's maybe partially good, maybe partially not good, but they get some effect. And that's why you can't just say that this whole class of plaintiffs can be stuck together like glue, such that if one plaintiff wins, all the plaintiffs win. There are typicality and commonality problems in holding that. Could there be, hypothetically, I understand you might not agree with this in reality, but could there be, hypothetically, uniform scientific studies that say that this particular product has no benefit whatsoever? If, hypothetically, there were uniform scientific studies, would you agree that class certification would be appropriate? Partially, I'd have to say that it depends. I mean, here, all of the evidence in the way of scientific studies came from Procter & Gamble, not from the plaintiffs. So if the plaintiffs were to introduce those sorts of studies, I think we'd be in a very different ballgame. I can't say for certain that the game would be over. But, for example, you could have a class action where if P&G sold a health supplement and they promised that there was 10 percent of bacteria in it, and it turns out there's only five, that, to me, sounds like a class action, or at least a lot more than the facts we have in front of us today. So, Your Honors, turning first to whether plaintiffs had proven commonality and typicality, there's no question that Dukes informs this case here. Again, there were lots of evidence supported into the record in Dukes, and yet the Supreme Court said it wasn't enough, that you needed to sift the evidence rigorously to make sure that, in fact, there was a claim. I'd also point to this Court's decision in Whirlpool. Plaintiffs suggest we want to run away from Whirlpool. Quite the opposite. We'd like to embrace Whirlpool. Whirlpool has exactly the facts that this case does not. In Whirlpool, there was scientific evidence from engineers and others that said that every washing machine had a defect, a propensity to grow a mold in the washing machine. And because of that defect, there was typicality and commonality in the class, and that class could be certified and was correctly done. Here, you don't have that scientific evidence that every Align pill is bad or that every consumer who picks up an Align pill is being defrauded. You have everything from, like I said, those who get no help to those who get all help, and that's the difference. Whirlpool was absolutely rightly decided. This case, not so much. No typicality also. Align works for many consumers. The three named plaintiffs are not coextensive with the class they represent, and now they say it's not useful, so they want refunds. The problem is, if you look to Comcast, the refund obligation has to match whatever the alleged harm is. And the refund obligation they're asking for here is every dollar for every bottle of Align ever spent by anyone. That can't possibly... Why doesn't that, if their theory is correct, that this bifidobacterium infantis 35624... We call it bifido for short. Okay, bifido does not work. If their theory is correct, isn't their theory that everybody should get a refund a correct theory? So doesn't this rise and fall on the first point, that you don't think their theory is correct? I'm not even sure. Well, if their theory is that nobody ever got any benefit from Align, yeah, maybe that could be correct. The problem is that all the evidence is that some people got at least some benefit from Align, and giving them the entire dollars of money back for the bottle they bought seems highly inconsistent with Comcast and others that say you have to model your damages model around what the alleged harm is. Maybe in response to that argument, we'll expect to hear from the plaintiffs that even though they think they got a benefit, absolutely nobody got any benefit because it's snake oil. So does your argument cover that? Absolutely. And I would just direct the court to the declaration of Dr. Mernstein. Dr. Mernstein went through both animal studies and people studies, I believe in 41 and 42 of his declaration, and showed that absolutely people got good results. In fact, plaintiff's own expert, Dr. Kamari, you may remember from the briefs, testified that he had no opinion and had not formed any opinion on Align and its effectiveness, but he gave it to a number of his patients and believed even one of them had good success with it. But then didn't he backtrack a little bit and say he could have been a placebo effect? After he was outdoors in the lobby with counsel and came back in, he did try to walk that back. But the original testimony stands. That's what he said. And that person, there's no distinction, no disagreement, at least as I sit here, that that person got that stuff. My understanding of their theory, Judge Cook used the word snake oil, which was in the briefs. Which is in the briefs. I'm not saying it's your choice. The audience should know that. It wasn't my term. It was not your term. It was a term in the briefs. But basically the theory of the plaintiffs is that the active ingredient is of no use and the inert ingredients are of no use and they're all in a pill, so it's not like a yogurt where you can say, well, you're getting calcium or something from yogurt. And if their theory is correct, it would seem that they should be able to go ahead. Now, you're saying we should look at Dr. Mernstein's statement that some people get good results, and he's an expert from your side. So I guess this raises the interesting question of the conjunction of the merits issue with the class certification issue. How far do we go into evaluating the merits at this point in time? And that's exactly where I was going next. Thank you, Your Honor. I was going to say the point of all of this is that Dr. Kamari's patient, who lives in Illinois, if the plaintiff is successful here, what happens is these drugs go off the shelves. They are no more, because any time you sell another one of these drugs, you're potentially hit for the full purchase price of the drug. So in a strange resolution here, Dr. Kamari's patient is out of options. Is it the case that every time an Align product is sold that it's, as you say, snake oil? Of course not. We have evidence of 85% of people who rebuy this stuff. Dr. Mernstein said it was good, robust evidence. 40% to 45% say it works. One study said it went as far as 84%. Did Mernstein, as reveled in the plaintiff's brief, did Mernstein concede that if there is a claim, it is class-wide? No, Your Honor. They make a lot of that in the brief. What he said was if there is a claim, it can be scientifically evaluated. That just means you can use principles of science to figure out whether it's true or not. It doesn't speak to whether you do that at class action time or at merits time. And I don't think I answered Judge Moore's question, which is, yes, this is a good sense of when class certification stops and when merits start. But here we never got to class certification. We had plaintiffs saying this is our class, it's anyone who ever bought the thing between 2009 and the first notice, and that's it, that's our class, and we're going to go forward and three named plaintiffs for five states will be the champions of this class, three of whom think there's no benefit at all to this stuff. The problem is they didn't come with evidence. They came with attorney argument. And all of our evidence shows that, in fact, a line does do good. A line is a probiotic, helps people, some people more than others, but it absolutely helps people. How did the district court reconcile your evidence? He mostly took the playbook of the plaintiff's evidence. There are a couple string sites of evidence within the opinion, but mostly he took the attorney argument from my brother over here and wrote it out. I don't remember whether the district court ever wrestled with your experts or the studies. No. And I don't think the court ever refers to the line of Supreme Court cases that pretty much changed the terrain with respect to the class actions. And that's where the district court fell into error. Given the facts, we believe the district judge was led into error by the plaintiffs that he, it's not that he didn't try, but it's that he did not apply this most recent line of cases, Dukes, Halliburton, Comcast, and had he done so, he would have seen that this case is just not right for class treatment. I see my light is off. If I could reserve my time for rebuttal. May it please the court, Timothy Blood for the Appalese. It's undisputed, and it was undisputed at the district court, that the only reason one would purchase a line is for the digestive health benefits. Then the question is whether or not a line, as a matter of medical science, provides those digestive health benefits. In the words of Walmart versus Dukes, the Supreme Court case that was just mentioned, the determination of that, quote, the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Therefore, it's an appropriate class case for certification. What I'm wondering, Mr. Blood, is that where is, at what point, does that scientific evidence need to be put on the table? Is it, I mean, it seems that the cases from the Supreme Court, beginning with Walmart, say that the court has to scrutinize and look for realism about the claim, that sort of thing. It strikes me that Judge Black didn't do that here. No, Judge Black did do it. Now, first of all, Judge Black relied on 185 exhibits and about 150 pages of briefing. His opinion, which is 38 pages long, doesn't cite to any allegations. It cites to evidence throughout, and Judge Black weighs evidence. Some of his opinion is cut and pasted from your complaint, isn't it? No, not at all. Some of it is from our pleadings, which cite to the evidence. But it's absolutely citations to the evidence. There's no questions. Your opponent specifically told us to look at the declaration of Dr. Mernstein at 41 and 42 that says, according to my notes from him, people got good results. So if that's true, would that not show that your theory of the class is wrong and that class certification should not be granted? No. The ultimate question in the case is whether a line works or does not work as a matter of medical science. Dr. Mernstein did not testify, either by declaration or at his deposition, that it only works for some people and that the advertisement is effectively false as to other people. That is not what he said. What Dr. Mernstein said, and the only citation for this by appellants, is to Dr. Mernstein's conclusion at page 46 of the record entry 115. He quote, and I quote, While a line is efficacious and produces a positive health impact, the effectiveness of probiotics varies from person to person, as in the case with all supplements and drugs, including over-the-counter drugs. He did not testify that it worked for some people but not for others. He testified that it worked for everyone. It's just the effect may vary. At his deposition, and this is in the sealed appendix at 915, a question, and your belief is that a line's advertisement claims are true for the general population, right? Dr. Mernstein, quote, I think they are true structure function claims for the general population. Yes. That would Do the plaintiffs, the named plaintiffs or the complaints set, in the efforts so far, do we see any evidence from the plaintiffs? Oh, yes. So the plaintiffs submitted most of those exhibits, most of the evidence, and the evidence consists of I meant scientific. I'm sorry, Mr. Blood. Scientific evidence. Yes. The plaintiffs are the ones that submitted all of the clinical studies that were utilized in the case. All of those clinical studies, every single one of them, showed that a line does not work. The evidence, the studies that the appellants are referring to are not scientific studies of a clinical nature. Dr. Mernstein cites to some animal in vitro studies, but the studies that were referred to in oral argument just now, those studies are, they're not really studies, they're marketing studies of whether or not people repurchased the product. Are these the studies that were done by the manufacturer, by the doctor in Gamble? Yes. So that's the, I'm saying what evidence did the plaintiffs, independent evidence that not garnered from Procter and Gamble. The independent evidence that was submitted that illustrates what the issue is on certification and whether it can be proven or disproven in a class trial are clinical human trials of a line or the bacteria that's in a line. That were paid for by P&G. Some were paid for by P&G and some were not. Even the ones that were paid for by the plaintiff, I'm still trying to get evidence that the plaintiffs sought before they filed. Those clinical trials. You sought the evidence, you have the evidence from P&G and that set it up for you. Independent clinical trials and then also clinical trials that were paid for by P&G and those paid for trials by P&G, those are typically in the world of science the suspect ones and those show quite clearly that a line does not work. That's what the ASC-1 study, that was a study paid for by Procter and Gamble. The conclusion of that study was, as a matter of medical science, a line doesn't do anything. Okay, so you're saying, first of all, in answer to the question, did you have evidence to support your theory, that yes, you do have scientific evidence to support your theory. And am I correct in my discussion with your opponent that your theory is that a line produces no actual benefit except for a potential placebo effect. So people think they're feeling better and therefore would buy more of a line because of the placebo effect, but that the scientific studies say that there's no actual benefit apart from that and that that's your theory as to why, A, a class should be certified and, B, why your damages remedy is an appropriate remedy. Absolutely, Your Honor, and the issue on class certification is whether that issue can be tried on a class-wide basis, not whether plaintiffs or the defendant is correct on that ultimate issue. Also, at the trial court level, though, Procter & Gamble took a different tack than they did here. At the trial court level, they said that the merits should not be reached at the class certification stage, precisely the position that we have taken both down below and here. At page ID 6499, the court asked Mr. Ireland, one of Procter & Gamble's attorneys, So to deny certification, do I need to conclude that a line doesn't, that a line does what it says it will? Answer, you don't have to reach that question. Also at page ID 6502, the court, When do we try the issue, does a line work as advertised? With the trial on the merits? Mr. Ireland, well, like I said, it depends on what your decision is with respect to class certification. If you certify a class, then yes, presumably that is where you would deal with it. And that is consistent with the Supreme Court's most recent discussion of this issue in the Amgen case, where the ultimate question, where the court should not delve into the merits of the case on class certification except to the extent necessary to determine whether the issues can or cannot be tried on a class-wide basis. What case? Amgen v. Connecticut Retirement. And that follows Wal-Mart v. Dukes to a degree. Halliburton discusses, repeats the same language, but I think it's not relevant. So if it's as is set up by the plaintiffs, this argument for certification as set up, if even one person actually is benefited, then that defeats the class, the appropriateness of certification? No, the question is to be every person. That's why I'm putting it that way. I don't think that's the issue. The issue is whether or not the advertisements are likely to deceive, are deceptive. That's really the question. So if there was somebody with an unusual physiology that's never been known to humankind before was benefited, no, that wouldn't defeat anything. What about the irritable bowel folks, IBS? The advertisements, and this is undisputed, the product is directed to healthy people in the general population, not diseased people. So this has to provide digestive health benefits to the general population of healthy people, not diseased people. And that's undisputed. There are cases in the false advertising context that have dealt with these issues and the issue of science. The lead case is Federal Trade Commission v. Pantron I. It's a 1994 case from the Ninth Circuit. FTC cases are important in this area. That case certainly wouldn't take into consideration the development of the law since then by the Supreme Court, would it? Well, it wasn't a class certification issue. So on the issue of class certification, it doesn't address that at all. But it does go to the question of the satisfied customers, the repeat purchaser issue. And there the Ninth Circuit said under the FTC Act that satisfied purchasers not let the false advertiser off the hook. The fact that the false advertiser was particularly good at falsely advertising the product does not mean that they get away with it. The FTC cases are important because the state consumer protection statutes are known as little FTC acts, and courts direct state courts interpreting those acts to look to FTC decisions. This issue was already decided also by the Eleventh Circuit involving a probiotic case on class certification in the Fitzpatrick v. General Mills case. Now that case was a case involving Yoplait yogurt that was infused with bacteria that they claimed was probiotic. There the district court certified the class. The case went up on a 23-F appeal. And the Eleventh Circuit affirmed that determination, sent it back for a fix on the class definition that is not relevant here. But the Eleventh Circuit went out of its way to say that the district court absolutely got that analysis right, an analysis that is identical to what was done here. And also found, citing to the recent Supreme Court cases, that the ultimate issue of whether or not the bacteria provided a probiotic effect or not was a question of medical science, the ultimate issue in the case, and one that properly should not be determined at the class certification stage. So suppose that there is evidence in the record that there are some studies that say that this probiotic actually works. Would that defeat class certification? No, and if the Third Circuit's NREI-Nurotin case, which is not a class certification case, or the FTC v. Pantrone case, discuss how to evaluate scientific evidence in this context. The fact that there are disputed issues of fact is the reason why there are trials. So one would expect that a trial would be had, a classic battle of the experts in this case, where one side would say, this is what the medical science concludes, and the other side would say, no, something else is what the medical science concludes, and then the fact finder would determine. Today we're looking at whether or not the certification is appropriate at this stage in the absence of realism of your claim now. You have to agree that some science and scrutiny of the science has to occur at the certification stage. Absolutely, and down below... Was that done? Oh, yeah, absolutely. Remember, down below this was not a contested issue. This is something that was created on appeal. This was never an argument that was made below. Down below... There's an opinion from the district court about certifying. The court did make a judgment about that. Oh, right. Down below, Procter & Gamble said, this works for everybody. Down below, plaintiffs said, this doesn't work at all. That is the kind of issue that can be tried on a class-wide basis. The question is not who's right or wrong on that ultimate issue. The question is, can that issue be adjudicated by a trier of fact on a class-wide basis? Issues of medical science are prototypical issues for determination on a class-wide basis. Because from a matter of medical science, it's true either for everybody or for nobody when you look at what the population of everybody is, and here it's the general population of healthy people. And that's what the studies that plaintiffs submitted below talk about. These are studies that were done to look at the issue of whether the bacteria in a line works. Now, most of those studies concluded there was absolutely no benefit to a line. There is a study that concluded that there was a statistically significant benefit with regard to some other aspects of it, but that study has never been repeated. And what study was that one? That was, I can't remember as I stand here now. The studies are actually discussed in our brief on appeal. But that's an indicator. The fact that it was never repeated again and the statistical significance was only slight is an indicator that it was a random finding and that it's not a true finding. That's the nature of science, and that's why studies are done repeatedly. Oh, I'm sorry. Thank you very much. Nothing further. Thank you. Good morning again, Your Honors. Three short points, if I may. One, you were asking my brother over there what was the best study for us. That's the Omahonee study. It was IBS, but it was the placebo gold standard, and that's one of the studies attached to R115. Second, I didn't argue about the class being oper parod or not having Article III standing in my opening, so I won't do it here. But as an officer of the court, I should point out that the Tyson case from last week from the Supreme Court actually granted review of this Article III standing. So for the Court's indulgence, that's that. The last point I wanted to make was, as Judge Cook asked, where was the district judge's head and what was being told to him? And I'm reading directly from page 26 of his opinion. He says, The resolution of these questions does not rise or fall on the individualized conduct of class members, but on defendant's conduct and the objective medical science about whether a line works. These questions are binary. Either the advertising message was made or it was not, and the digestive health claim is either true or not, full stop. So that's what was advocated by my brother to the district court, and that's what he held. And that's what fundamentally we don't believe can control this, because, again, there's a range of folks who take a line, good, bad, everything in between. Unless the Court has further questions. What do you say he did wrong? Why isn't it a binary question? Because there are lots of people for whom it either works great... For the variance, but it... It's the variance. And apparently then you quarrel with the general proposition that the placebo effect varies as among them, too. I mean, it has to be placebo. Some of it may be placebo, but, again, that just creates more individualized issues. I mean, we're talking about how are we going to treat these three named plaintiffs and all of the class members that stand behind them running in their shoes. If the three members start to claim placebo, which happened late in the proceedings down below, you know, my brother argued lots of these things. To the best of my knowledge, he's not a doctor, but he argued for these things. And it creates independent issues that, once again, would need to be tried in individualized trials. And that's, again, not what class certification is for. Thank you, Your Honors. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?